IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUETO RICO

**UNITED STATES OF AMERICA,**
   Plaintiff,

           Vs.                              **Criminal Case No. 00-35(JAF)**

**EDUARDO CRUZ RIVERA**
   Defendant

**MOTION TO SUPPRESS**

**TO THE HONORABLE COURT:**

**COMES NOW** Eduardo Cruz-Rivera, and through the undersigned attorney, respectfully alleges and prays:

1) Mr. Cruz-Rivera revocation hearing is scheduled for May 11, 2006. The acts that the government alleges warrant revocation is the indictment in case 06-27(JAG). We have submitted this same motion on case 06-27 (JAG) and have asked for consolidation of this matter, since it is the position of Mr. Cruz-Rivera that the state agents that intervened with him lied about the reasons they had to intervene with him. We further question the process by which the state agents allegedly found the evidence in the case at bar.

2) We submit that all the evidence seized in the case at bar was the product of an illegal search and seizure of Mr. Cruz Rivera's Mazda 6 automobile, that occurred on January 17, 2006, at 4:45 pm in the Jose De Diego Expressway (Road #22). Said evidence was seized without probable cause and was an illegal search of Mr. Cruz-Rivera's property. The agents lied about the probable cause requirement in order to administratively search the aforementioned vehicle in the Vega Baja Police Station, by alleging that there was a gun in plain view in the automobile.

3) We submit the present motion even though, as of today, the government has not produced a copy of the PPR 128 Form (administrative search form) or the prosecutor´s confiscation order. Although we do not have the benefit of this evidence, which we submit is favorable to the defense, we submit the present motion in order to safeguard Mr. Cruz-Rivera´s due process rights.

## FACTS

Mr. Eduardo Cruz-Rivera was stopped for an alleged traffic violation on January 17, 2006, at approximately 4:45pm. Puerto Rico Police officers assigned to the Drug Control Squad, Orlando Guzmán and Angel Carrer were driving a marked patrol car on the #22 expressway dressed as civilians. Allegedly, they saw Mr. Cruz-Rivera make various traffic violations. Although is not their primary responsibility as police officers assigned to the drug squad, they decided to stop the car driven by Mr. Cruz-Rivera. The testimony offered by both Agents during a hearing held under Rule 6 of the Rules of Criminal Procedure for the Commonwealth of Puerto Rico was contradictory. One of the Agents said that the traffic violation committed by Mr. Cruz-Rivera was zigzagging (common pretext for drunken driving interventions) and the other said that the traffic violation was an improper change of lanes. Whatever reason the officers had to follow Mr. Cruz-Rivera from the toll booth that is located in Dorado until the Vega Baja exit known as "Trio Vegabajeno" exit, is unknown. When Mr. Cruz-Rivera exited the expressway he was stopped by the aforementioned PPR officers, allegedly to give him a ticket. As admitted by Officer Guzman, the ticket was not given at the Vega Baja exit but rather at the police station where defendant was taken. Thus, the officer was not prepared nor trained to give traffic tickets, and said action goes directly to the credibility of the officer.

The government alleged in its Complaint that the PPR officers saw Mr. Cruz-Rivera attempting to hide what appeared to be a hand gun under the driver's seat. Nevertheless, agents Guzmán and Carrer both gave different versions of the facts during their testimony at the probable cause for arrest hearing (Rule 6 of the Rules of Criminal Procedure of the Commonwealth of Puerto Rico). None of their versions are congruent with what Special Agent Charles Ellison described in his sworn statement in the Complaint. Neither Agent Carrer nor Guzmán alleged that Mr. Cruz-Rivera was trying to hide a hand gun under the driver's seat of his motor vehicle. According to their sworn testimony, Agent Guzman was the intervening officer and Agent Carrer was his backup. Once Agent Guzman approached the vehicle he greeted Mr. Cruz-Rivera, advised him the reason for the detention, and asked him for his driver's license and the registration of the vehicle. Mr. Cruz-Rivera answered that he had a driver's license but he was not carrying it with him. Agent Guzman asked Mr. Cruz Rivera to step out of the car, to what Mr. Cruz Rivera consented and stepped out. Agent Guzman never mentions seeing Mr. Cruz Rivera trying to hide anything under his seat or seeing a gun in plain view.

On the other hand, agent Carrer admitted that once Mr. Cruz Rivera was outside the car, he opened the passenger side door and saw the grips of what appeared to be a hand gun. He further alleges that he verified the alleged grips and seized a hand gun. He allegedly advised agent Guzmán to arrest Mr. Cruz Rivera. In their testimony they never mention that Mr. Cruz Rivera was trying to hide anything under his seat. Thus, the government has three versions of the events, all of them clearly refuting each other. The inexorable conclusion is that the agents are lying in order to justify an illegal intervention where there was no probable cause for the automobile stop.

In fact, Mr. Cruz-Rivera contends that he was stopped for no reason when he exited the José de Diego Expressway at the Vega Baja exit. That he informed the officers that he had no license but offered the vehicle registration and his license number. Other PPR officers arrived at the scene and started searching the vehicle without justification. That Mr. Cruz-Rivera was taken for no reason at all to the Vega Baja PPR police station in his vehicle in the passenger seat while officer Guzmán drove his vehicle. Mr. Cruz-Rivera was denied access to family members and an attorney, since his cellular phone was also taken away from him while he was in the police station. After searching the car for over 2 hours, the officers told Mr. Cruz-Rivera that they would give him a few tickets. They escorted him to an office in the police station supposedly to give him the tickets. Nevertheless, after spending more than 25 minutes in an office, Mr. Cruz-Rivera heard a commotion and was told that he was under arrest because some arms and drugs were found in the car.

Subsequently, Mr. Cruz-Rivera was charged for violations of Articles 5.04, 5.07, 5.10 and 6.1 of the *Ley de Armas de Puerto Rico del 2000*, 25 LPRA section 455 *et seq.*, and Art. 401 of the *Ley de Sustancias Controladas de Puerto Rico*, 24 LPRA 2101 *et seq.*, in Bayamón Court of First Instance. However, Honorable Judge Francisco Ocasio Ortiz heard the testimonies of PPR Agents Guzmán, Carrer and Ruiz determined that there was **no probable cause** to arrest. It stems from the transcript of this hearing that officers Guzmán and Carrer gave contradicting versions of the events.

**ARGUMENT**

I.   **TRANSFER OF JURISIDICTION TO THE FEDERAL AUTHORITIES IS A SUBTERFUGE FOR SUBVERTING STATE LAW AND A SELECTIVE AND VINDICTIVE PROSECUTION BY THE FEDERAL AUTHORITIES.**

It is necessary at the outset to emphasize that the initial intervention, was carried out **solely under state authority**. Federal Agents intervened with Mr. Cruz-Rivera after there was a **no probable cause** determination by the Court of First Instance in Bayamón. It is well settled law that federal agents cannot use state agents as a subterfuge for violating the wider protections afforded by state law in order to prosecute in federal court. See Elkins v. US, 364 US 206 (1960).

Agent's Guzmán and Carrer actions are outside the boundaries established by the Supreme Court of Puerto Rico case law, and the Commonwealth's Constitution. The federal authorities, did not intervene in the case at bar **until after there had been a no probable cause determination at the Rule 6 hearing**. In fact, the only reason the federal government is interested in prosecuting Mr. Cruz-Rivera is to indict someone else who the government suspects is associated with Mr. Cruz-Rivera. However, the government is unable to establish a link between Mr. Cruz-Rivera and the person for whom they look. We submit that the actions of the federal government are embedded with an unconstitutional motive as they are selectively and vindictively prosecuting Mr. Cruz-Rivera for allegedly not cooperating with them.

It is well established that the standard of admissibility of the evidence depends upon the participation and supervision of Federal Agents in the operation.

> *"…this Court held that a search conducted by State Police Officers, pursuant to an invalid warrant did not necessitate suppression of evidence in federal court because a federal agent, who was at the scene at the time of the search, had authority to enter the premises to do "legally…exactly what…the (state)police did unlawfully."*

**US v. Aiudi, 835 F.2d 943 at 946 (1st Cir. 1987).**

However, it is impossible for the Aiudi exception to apply to the case at bar since federal agents had no previous knowledge of this operation, and therefore could not be

authorized to validate the illegal acts of state police officers. This Circuit has interpreted the

**Aiudi** exclusion to apply when:

> *"Aiudi…the evidence is state seized, and where the federal officers lacked the authority to legally obtain what state officers took illegally."*

**US v. Aiudi, 835 F.2d 943 at 946 (1st Cir. 1987).**

> *"Elkins teaches that federal prosecutors cannot use evidence illegally procured by state official when the "evidence [was] obtained by state officers during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures…The Elkins rule was designed to protect 4th Amendment rights by eliminating the incentive for federal law enforcement officials to encourage lawless searches and seizures by state officers…"*

**Aiudi, at 946-947** citing **Elkins v. United States, 364 U.S. 206(1960)**.

This case clearly falls within the scope of Elkins and Aiudi, insofar as the federal agents had no previous knowledge of the state operative that led to the illegally obtained evidence. The lack of knowledge precludes the federal agents from validating the state police's illegal acts.

The testimony of the PPR agents does not withhold state scrutiny, particularly in light of the doctrine of stereotyped testimony. This doctrine mandates, as a matter of law, for the Court to look with suspicion those testimonies which limit themselves to the basic elements of the offense, those testimonies which use dropsy or **plain view** as the excuse for an intervention, as well as those testimonies which are inherently unbelievable. In **Pueblo vs. Gonzalez Del Valle, 102 D.P.R. 374 (1974), and Pueblo vs. Almodovar, 109 D.P.R. 117 (1979),** the Supreme Court of Puerto Rico defined the guidelines to utilize when evaluating testimony which could have been potentially designed to circumvent the constitutional protections against unreasonable search and seizures:

> a). All stereotyped testimony must be examined with particular scrutiny.

    b).  Specially cases involving abandoned evidence as well as evidence of ***illegal acts committed in plain view***.
    c).  If the witness is inherently incredible or the testimony improbable, it should be rejected.
    d).  Stereotyped testimony may be entertained if, in addition to proving the main elements of the crime, it is surrounded by circumstances that lend reliability, such as, that it falls within the basic functions of the agent, the documents of the investigation, and other elements outside of the case.
    e).  The presence of contradictions, ***vagueness*** or omissions should increase the scrutiny with which the testimony is viewed.
    f).  The burden of proof to rid the testimony of the stereotyped doubt falls upon the prosecutor. The evidence to support stereotyped testimony cannot be scant and unsubstantiated.

  This type of false stereotyped testimony contravenes the Commonwealth's Constitution, which affords greater protection to persons under criminal investigation than its federal counterpart. Under state law the agents would face a heavy burden given state constitutional protections mentioned.

  Given the above factors, specifically that federal agents did not participate in any part of the investigation, and that Mr. Cruz-Rivera rights are substantially curtailed in Federal Court, it can only be presumed that the current transfer of jurisdiction was a rouse to prosecute Mr. Cruz-Rivera and put pressure 0n him in order to force him to cooperate with the government. In fact, the government, through AUSA Nathan Shulte, expressed in the last status conference, as well as many times before, that this is a *special interest case* for the government. In fact, he has expressed that there will be no plea agreement in order to force Mr. Cruz-Rivera to cooperate with authorities.

  We recognize that a defendant claiming selective prosecution has the burden of establishing by clear and convincing evidence that there was disparate treatment and that the prosecution was improperly motivated. **Wayte v. US**, **470 US 598 (1985).** Nevertheless, we submit that in the case at bar there is disparate treatment among similarly situated

defendants in the district, i.e. defendants whose cases with similar amounts of drugs and fire arms in a hidden compartment of a car, and where there was a no cause determination at the Rule 6 hearing. Furthermore, we submit that the government's purpose is to coerce Mr. Cruz-Rivera into cooperating because of the inherent risk of a criminal litigation in the district and the penalties involved in the offense, given that Mr. Cruz-Rivera is a repeat federal offender.

We allege that this is a vindictive prosecution as the reason for prosecuting him is his lack of cooperation with the authorities. We submit that the reason for prosecuting Mr. Cruz-Rivera is vindictive in nature. "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort… and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is ´patently unconstitutional´". See **Bordenkircher v. Hayes, 434 US 357, 363 (1978)**. A presumption of vindictiveness typically arises when a defendant is reindicted with an increase in the number and severity of charges. **US v. Wilson, 639 F.2d 500, 502 (1981).** In the case at bar we have a similar situation since Mr. Cruz-Rivera was brought to the federal jurisdiction where the severity of the charges was drastically increased as compared to the state jurisdiction, as he had a pending federal sentence.

### II. THE STOP OF THE VEHICLE WAS UNCONSTITUTIONAL BECAUSE THE OFFICERS DID NOT HAVE PROBABLE CAUSE TO BELIEVE THAT A TRAFFIC VIOLATION HAD OCCURRED

A search or seizure without a warrant is presumptively invalid. **Coolidge v. New Hampshire, 403 U.S. 443 (1971).** It is a "cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se un

reasonable under the Fourth Amendment –subject only to a few specifically established and well-delineated exceptions. " **Acevedo v. California, 500 U.S: 565, 580 (1991) (quoting Mincey v. Arizona, 437 U.S. 385, 390 (1978).**

"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' for purposes of the Fourth Amendment. **Whren v. United States, 116 S. Ct 1769, 1772 (1996)**. "An automobile stop is thus, subject to the constitutional imperative that it not be 'unreasonable ' under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has been committed on their presence.

In the case at bar, the sworn testimonies given by Agent Guzman and Carrer are contradictory. To this extent, it is our contention that there was no probable cause to stop the car driven by Mr. Cruz-Rivera, rendering the aftermath an illegal search of the vehicles and belongings of Mr. Cruz-Rivera.

### III.  THE SEARCH MADE TO MR. CRUZ-RIVERA'S CAR FALLS OUTSIDE THE PARAMETER OF AN  ADMINISTRATIVE SEARCH MAKING IT AN UNREASONABLE ONE

According to Agent Ruiz´ sworn testimony, he was the one who performed the Administrative search of the vehicle. The reason for his search was that the vehicle was ordered confiscated by the prosecutor. Agent Ruiz acknowledged that while he"…lifted up the edge of the back part of the back seat …" he saw some hinges that caught his attention and that he took it upon himself to check what this hinges where, detecting an electrical system hidden trough the car, that opens a secret compartment". In this "secret compartment" the evidence was seized. The facts

testified by agents Guzman and Carrer regarding the observation of the handgun between the front seat and the console is just a mere pretext to justify their detention and intervention at hand.

Since our contention is that Mr. Cruz-Rivera's detention was illegal, his property was unlawfully under governmental custody. Nonetheless the pretext used by Agent Ruiz to cover up his illegal search, as an administrative search, does not hold scrutiny. A warrantless search was not necessary to protect the owner's property, nor it was made to protect the police against claims of stolen property, nor was there any inherent danger to the agents well being. *See* **Colorado v. Bertine, 479 U.S. 367, 372 (1987); Illinois V. Lafayette, 462 U.S. 640, 646 (1983).** Because the justification of the search is the production of an inventory, the police may not conduct an inventory search in bad faith or solely for investigatory purposes. Id.

### IV. THE SEIZURE OF THE WEAPON WAS UCONSTITUTIONAL BECAUSE OFFICERS DID NOT HAVE PROBABLE CAUSE TO ENTER MR. CRUZ-RIVERA CAR AND SEIZE THE EVIDENCE.

Taking the testimony of both Agents as truthful, once Agent Carrer allegedly saw something that look like a weapon inside the car of Mr. Cruz-Rivera he should have corroborated his observations with less intrusive means. Police may not disturb or further investigate an item to discern its evidentiary value without probable cause. See **Arizona v. hicks, 480 U.S. 321 (1987).** Once Agent Carrer made his observations he did not investigated any further into the matter, he could have asked Mr. Cruz Rivera to corroborate his observation; could have asked him if he had a gun permit issued by the State Government, he did not took any of this actions . In any case, a search warrant

was needed to search the car since there was no danger that the evidence would be lost, there was no fear the suspects would escape or the agents were in danger. See Pueblo v. Malavé, 120 DPR 470 (1988).

### V.  THE COURT MUST HOLD AN EVIDENTIARY HEARING TO RESOLVE THE CRITICAL DISPUTED ISSUE OF FACT

An evidentiary hearing on a motion to suppress is required if the moving papers are definite, specific and detailed enough for the court to conclude that there are contested issues of fact regarding the validity of the search. **United States v. Licavoli, 604 F.2d 613, 621 (9th Cir. 1979), cert. denied, 446 U.S. 935 (1980).** The contradictions in the testimonies given by Agents Guzman and Carrer and the statements of facts made by the Government so far clearly put in dispute the critical factual issue of the alleged traffic violation and intervention with Mr. Cruz-Rivera. Furthermore, Mr. Cruz Rivera has asserted a fourth version of the events that would make the police intervention illegal. Accordingly, an **evidentiary hearing is necessary**. At the evidentiary hearing, the government has the burden of showing that a warrantless search is reasonable. United States v. Carbajal, 956 F. 2d 924, 930 9th Cir. 1992).

**WHEREFORE**, for all the reasons set forth above, it is respectfully requested that the Court grant the instant motion and declare the suppression of all the evidence seized by the PPR officers.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, on this **May 10, 2006**

**CERTIFICATE OF SERVICE**: I hereby certify that on May 10, 2006 electronically

filed the foregoing with the Clerk of the Court, using the CM/ ECF system which will send automatic notification of such filing to: AUSA Nathan J. Shulte, and all attorneys of record.

**S/ JORGE LUIS ARMENTEROS CHERVONI**
Bar #214614
Cond. Galería, Suite # 2, PMB 202
201 Arterial Hostos
San Juan, Puerto Rico 00918-1405
Tel. (787) 751-7634
Fax. (787) 764-1086

Z:\Armenteros\FEDERAL CRIMINAL\Eduardo Cruz Rivera\caso Fuste revocation\MOTION TO SUPRESS.doc